**UNITED STATES of America,**
**Plaintiff,**

v.

**Irving KAHN, Teleprompter Corporation, Defendants.**

**No. 71 Cr. 1048.**

United States District Court,
S. D. New York.

Dec. 16, 1971.

---

Whitney North Seymour, Jr., U. S. Atty., by Andrew J. Maloney and John

D. Gordan, III, Asst. U. S. Attys., New York City, for plaintiff.

Davis, Polk & Wardwell by Robert B. Fiske, Jr., Curtis, Mallet-Prevost, Colt & Mosle, by Peter E. Fleming, Jr., New York City, for defendants.

MOTLEY, District Judge.

*Memorandum Opinion on Defendants' Post-Trial Motions*

Defendants Irving Kahn and Teleprompter Corporation, having been found guilty by a jury on October 20, 1971 of five and four counts respectively of a five-count indictment, move for judgment of acquittal pursuant to Rule 29(c) of the Federal Rules of Criminal Procedure and, in the alternative, for an order granting a new trial under Rule 33 of the Federal Rules of Criminal Procedure.[1] They raise six points in their motion and supporting memorandum which will be dealt with in sequence below.

■ The motion for judgment of acquittal is denied on the ground that as to each count in the indictment the evidence was not only sufficient to sustain a conviction of the offense charged but was overwhelming.

1. Rule 29(a) and (c) provide as follows:

(a) Motions for directed verdict are abolished and motions for judgment of acquittal shall be used in their place. The court on motion of a defendant or of its own motion shall order the entry of judgment of acquittal of one or more offenses charged in the indictment or information after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses. If a defendant's motion for judgment of acquittal at the close of the evidence offered by the government is not granted, the defendant may offer evidence without having reserved the right.

(c) If the jury returns a verdict of guilty or is discharged without having returned a verdict, a motion for judgment of acquittal may be made or renewed within 7 days after the jury is discharged or within such further time as the court may fix during the 7-day period. If a verdict of guilty is returned the court may on such motion set aside the verdict and enter judgment of acquittal. If no verdict is returned the court may enter judgment of acquittal. It shall not be necessary to the making of such a motion that a similar motion has been made prior to the submission of the case to the jury.

Rule 33 provides as follows:

The court may grant a new trial to a defendant if required in the interest of justice. If trial was by the court without a jury the court may vacate the judgment if entered, take additional testimony and direct the entry of a new judgment. A motion for a new trial based on the ground of newly discovered evidence may be made only before or within two years after final judgment, but if an appeal is pending the court may grant the motion only on remand of the case. A motion for a new trial based on any other grounds shall be made within 5 days after verdict or finding of guilty or within such further time as the court may fix during the 5-day period.

Both defendants were charged in count 1 with conspiring to violate 18 U. S.C. § 1952 (18 U.S.C. § 371). They were also charged in counts 2, 3, and 4 with three separate substantive violations of § 1952. Defendant Kahn was charged in count 5 with perjury before the grand jury when questioned about his involvement in the foregoing crimes (18 U.S.C. § 1621). Two codefendants who had pleaded guilty testified for the government. One was the Mayor of Johnstown, Pennsylvania. The other was a city councilman, J. Howard Deardorff. Both testified that they had requested and had received payments from Kahn in connection with their vote favoring Teleprompter with respect to a cable television franchise. The Mayor's son, to whom one of the payments had been made in New York by defendants, testified that he mailed the payment to his father in Johnstown. The comptroller of Teleprompter testified that two other checks were mailed from New York to Johnstown. The Mayor testified that he had travelled to New York as alleged and Kahn had travelled to Pennsylvania.

Defendants did not deny that payments had been made to Johnstown officials or that interstate commerce was involved. The defense was that the money had been paid not as a bribe but had been paid as a result of extortion of defendants by the Johnstown officials, who had threatened to deny Teleprompter the right to continue to operate in Johnstown.

The case for the jury was thus simply one of whether it believed the officials who testified for the government or whether it believed the defense version of why the money was paid.

Defendant Kahn appeared before the grand jury on December 17, 1970 and denied that money had been improperly paid, or claimed that he could not recall the facts. He reappeared on January 27, 1971 and read a prepared, detailed statement admitting that money had been paid but setting forth for the first time the claim of extortion.

■ The motion for a new trial is denied on the ground that a new trial is not required in the interest of justice.

The jury was instructed that it could consider defendant Kahn's testimony before the grand jury of January 27, 1971 to the effect that the money had been paid as a result of extortion in determining the crucial question whether defendants had the requisite intent to influence public officials, an essential element of bribery under Pennsylvania law, and on the issue of knowledge and wilfulness. (Tr. pp. 1167–71, 1193–94) Mr. Kahn's statement was the prime, if not the only, evidence in the case on the defense theory.

Defendants' first claim is that the court failed to instruct the jury, as requested by defendants, that extortion is a complete defense under Pennsylvania law or under federal law to a charge of bribery. This contention, a mere quibble in the light of the instructions that were given, relating to counts 1–4, has previously been ruled on in an opinion filed by this court on October 27, 1971.

■ Defendants' second, third, and fourth points concern the perjury count of the indictment, count five, which charged defendant Kahn only. With respect to this count, Kahn's first claim is that the government proceeded under the wrong perjury statute, indicting Kahn under 18 U.S.C. § 1621, instead of under 18 U.S.C. § 1623, thereby depriving him of a defense to this count. This argument was ruled on by the court from the bench, adversely to Kahn, during trial, when the objection was made for the first time.[2]

Defendant's contention here is that the government used his allegedly truth-

2. Kahn agreed to the filing of the superceding indictment containing two perjury charges against him the day of trial and waived any motions he might have made directed to same (Tr. p. 9). The second perjury count, count 6, was dropped by the government.

ful statements before the grand jury on January 27, 1971 to convict him of perjury before the grand jury on December 17, 1970. The chain of inferences suggested by the government, according to Kahn, is that his grand jury testimony of December 17, and that of January 27, were mutually contradictory; that the latter testimony was truthful; and that the former must, therefore, have been false.

Kahn argues that under § 1623(d) such a chain of inferences is impermissible. § 1623(d) reads:

Where, in the same continuous court or grand jury proceeding in which a declaration is made, the person making the declarations admits such declarations to be false, such admission shall bar prosecution under this section if, at the time the admission is made, the declaration has not substantially affected the proceeding, or it has not become manifest that such falsity has been or will be exposed.

There are two responses to this. First, it is not entirely clear that Kahn's testimony on January 27 can be treated as an admission that his prior declarations were false. Second, one cannot say that it had not "become manifest" that the falsity of Kahn's earlier testimony had been or would be "exposed" at the time his second grand jury statement was made, since Kenneth Tompkins, Jr. and the other defendants had, by that time, altered their previous grand jury testimony in such a way as to call into question the truthfulness of Kahn's testimony on December 17.

Moreover, had Kahn been indicted under § 1623, subsection (c) of that section would have worked to his disadvantage in a way § 1621 did not. Subsection (c) provides:

An indictment or information for violation of this section alleging that, in any proceedings before or ancillary to any court or grand jury of the United States, the defendant under oath has knowingly made two or more declarations, which are inconsistent to

the degree that one of them is necessarily false, need not specify which declaration is false if—

(1) each declaration was material to the point in question, and

(2) each declaration was made within the period of the statute of limitations for the offense charged under this section.

*In any prosecution under this section, the falsity of a declaration set forth in the indictment or information shall be established sufficient for conviction by proof that the defendant while under oath made irreconcilably contradictory declarations material to the point in question in any proceeding before or ancillary to any court or grand jury. . . .* (Emphasis added)

Thus, § 1623(c) sets forth an exception to the general requirement, applicable to indictments under § 1621, that the government must prove the true facts in perjury cases. Therefore, Kahn was not prejudiced by being indicted under 18 U.S.C. § 1621 even if it can be said that the special provisions of 18 U.S.C. § 1623 were applicable to the facts of this case.

Kahn next claims that the perjury count should have been severed from the other counts in the indictment. The court ruled on this contention before trial, denying Kahn's oral motion to sever the perjury count. (Tr. p. 77).

■■ In order to meet its burden of proof on a perjury charge under 18 U.S.C. § 1621, the government must prove the true facts regarding which there is alleged to be a falsification. In the instant case, the transactions concerning which Kahn allegedly testified falsely before the grand jury are the very same transactions on which the conspiracy and substantive offense counts are based. Thus the government's proof on the perjury count as to the true facts behind Kahn's grand jury testimony was identical with proof on the remaining counts. Under such circumstances a defendant is in no way prejudiced by the

holding of a single trial for all of the offenses charged. See Rule 8(a), Federal Rules of Criminal Procedure.

Next Kahn claims that the court failed to give the jury an instruction not to consider Kahn's testimony before the grand jury on January 27, 1971 as evidence that he perjured himself on December 17, 1970, unless they found the January 27 testimony to be false. This instruction was previously requested by defendants and denied.[3] The request apparently stems from defendant's belief that 18 U.S.C. § 1623(d), *supra*, governs the perjury count. However, even if we were to grant that § 1623(d) is applicable here, which we do not, defendant mistakes his remedy. That subsection states that a prosecution for perjury is *barred* where there has been a timely, good faith recantation, and not that the recantation statement, if true, is inadmissible on a perjury charge based on the earlier statement but, if false, is admissible on such a charge.

The next contention is that the court should have instructed the jury not to consider in their deliberations on the perjury count certain "literally true" responses of defendant Kahn contained in that excerpt of his grand jury testimony quoted in count five of the indictment.[4] Defendant argues further that the perjury rule on corroborating testimony was not satisfied as to other portions of the excerpt alleged to constitute perjury, and that these should have been kept from the jury as well. Such instructions were not warranted by the evidence in the case, and were not requested before the charge to the jury was given. (Tr. pp. 1126–30). See Rule 30, Federal Rules of Criminal Procedure.

Finally, Teleprompter argues that Kahn's testimony before the grand jury should not have been admitted against defendant Teleprompter because Kahn was not Teleprompter's agent when he appeared before the grand jury. It should be noted at the outset that the defense in this case on the part of both defendants was that the money was in fact paid to the Johnstown officials but

---

3. There is manifest confusion as to what instruction defendant would have had the court give as to the January 27 grand jury testimony. Defendant states as Point IV of his memorandum on his post-trial motions that, "The Court erred in refusing to instruct the jury that Mr. Kahn's January 27, 1971, testimony could not be considered as evidence that he perjured himself on December 17, 1970, unless the jury first found that the January 27 testimony itself was false." This was, in essence, the type of instruction requested by defendant prior to the charge to the jury. However, defendant states at pp. 37–38 of his memorandum, as to the same grand jury testimony, that " . . those admissions were not admissible on the question of falsity and . . . the Court erred in refusing to instruct the jury that Mr. Kahn's January 27 testimony *could not* be considered on that issue." (Emphasis in text).

4. As to literal truthfulness, defendant Kahn neither in his requests to charge, nor in his exceptions to the charge, alleged that any specific statements by him quoted in count five of the indictment were literally true. In his post-trial memorandum he points for the first time to the following two statements:
"Q. Now, this wasn't part and parcel of the negotiations for the Johnstown cable, was it?
A. Not that I recall."
\* \* \* \* \*
"Q. Did Mayor Tompkins ever ask you for any money in connection with the negotiations of Teleprompter and Johnstown in 1965?
A. Not that I recall."
Kahn claims that there was "absolutely no evidence" on which the jury might find these statements by him to be false. Defendants' Post-Trial Memorandum at 40.
Apart from the fact that there was ample evidence as to the falsity of these statements, the weight of the evidence going to the truth or falsity of a particular assignment of perjury has nothing to do with the issue of "literal truthfulness" raised here. See Unted States v. Bronston, 453 F.2d 555 (2d Cir., 1971). If defendant is contending that the payments were made "after" the negotiations and not as "part and parcel," or "in connection with" the negotiations, they are engaging in a semantic game that this court will not countenance.

it was paid as a result of extortion.[5] Kahn's January 27, 1971 statement related entirely to this defense. There was no other evidence of the defense theory. It, therefore, defies logic to have defendants now say that it was improper to have that statement admitted against Teleprompter.

However, there was no claim by the government that Kahn was acting as agent for Teleprompter when he testified and therefore such statements were admissible against it, thereby making this an issue in the case. The jury was instructed that only Kahn was charged with perjury. Moreover, there was overwhelming other evidence of Teleprompter's involvement in the other crimes charged against it to go to the jury. The comptroller of the company was called and testified to all the payments, and the circumstances under which they were made. The testimony of the chief government witnesses alone was enough to convict the corporate defendant.

Point VI assigns as error certain evidentiary rulings, and states that the conduct of the prosecutor warranted a mistrial. We find defendants' contentions under Point VI to be too insubstantial to require a judgment of acquittal or a new trial.[6] The evidence against both defendants with respect to the crimes charged against them was simply overwhelming.

 By oral motion, after the jury had returned its verdict, defendants raised an additional ground for a new trial. They claimed that the petit jury that tried and convicted defendants was unconstitutionally constituted. Defendants stated at that time that this challenge to the petit jury had been incorporated in the motion defendants made before trial, challenging the grand jury, the grounds of both motions being identical. We note, however, that the memorandum submitted by Alan Dershowitz on the pretrial motion directed to the grand jury specifically disclaimed any challenge to the petit jury array. See Supplemental Memorandum in Support of Defendants' Motion to Quash Indictment at 44, fn. 65. A petit jury challenge first made at the conclusion of the trial is untimely. See 28 U.S.C. § 1867(a), (e). See also the opinion filed by this court on October 5, 1971, rejecting defendants' challenge to the grand jury array on the merits.

 Defendants submitted a further post-trial motion requesting that the sentencing of defendant Kahn be postponed in order to permit an attorney, Donald McCullum, to testify in Kahn's behalf. This motion was denied by endorsement and orally from the bench, on the grounds that the information that Mr. McCullum sought to offer had already been communicated to the court by numerous letters from prominent citizens.

All of the defendants' post-trial motions must accordingly be denied.

So ordered.

---

5. Tr. pp. 185–186, 202–203, 210.

6. One of defendants' contentions here is as follows. At trial the government examined Deardorff on redirect-examination as to whether his wife had accompanied him on a trip he made to Europe recently. This questioning caused Deardorff to lose his composure on the stand. (The government had been attempting to show that the trip was Deardorff's first trip to Europe, made for the purpose of celebrating his fortieth wedding anniversary, and that the money to pay for it came from savings and a loan.)

Defendants claim that counsel for Kahn was not thereafter permitted to recross-examine Deardorff, after counsel for Teleprompter completed his cross-examination of this witness, in order to ascertain when Deardorff believed Kahn had offered payment of the alleged bribe. This is a misstatement of the court's ruling. The court did not rule at that time that counsel for Kahn was barred from recross-examining Deardorff but, instead, only that counsel could not discuss Deardorff's wife any further on recross-examination.